# IN THE SUPREME COURT OF TEXAS

No. 18-0289

IN RE STEPHEN CASEY, RELATOR

ON PETITION FOR WRIT OF MANDAMUS

**PER CURIAM**

Attorney Stephen Casey challenges a trial court order sanctioning him for "misrepresenting" and "not disclosing" legal authority in a motion to designate the real party in interest a vexatious litigant. Casey seeks a writ of mandamus compelling the trial court to either vacate the monetary sanctions order and reinstate the vexatious-litigant designation or defer the sanctions-payment deadline until rendition of an appealable judgment. In *Braden v. Downey*, we declined to consider the propriety of monetary sanctions by mandamus, holding instead that payment of monetary sanctions must be deferred until rendition of an appealable judgment if (1) the sanctioned party contends immediate payment would impair access to the courts and (2) the trial court does not promptly hold a hearing and make express written findings to the contrary. 811 S.W.2d 922, 929–30 (Tex. 1991). The *Braden* procedure helps ensure an adequate remedy for an improper sanctions order is available by appeal. *Id.* at 930. Consistent with *Braden*, we direct the trial court to modify the sanctions order to defer payment until final judgment is rendered, allowing Casey "an opportunity to appeal before such sanctions must be paid." *See id.*

This mandamus proceeding arises in the context of a long-running intra-family dispute over a personal loan Ann Coyle, an attorney licensed in Massachusetts, made to her brother and former sister-in-law, Chad Walker and Alisha Flood. Two previous lawsuits Coyle filed against Walker and Flood were settled by agreed judgment, but a dispute about satisfaction of the agreed judgments resulted in the parties levying new claims against one another.

Walker and Flood, represented by Casey, sued Coyle for abstracting a judgment fraudulently claiming they were in default. *See* TEX. CIV. PRAC. & REM. CODE §§ 12.002 (liability for fraudulent court record or lien or claim against property), 37.001–.011 (Texas Declaratory Judgments Act). Coyle, acting pro se, countersued Walker and Flood and instituted a third-party action against Casey for monetary, declaratory, and equitable relief. Like Walker and Flood, Coyle claimed court documents had been filed fraudulently. She also sought damages for intentional infliction of emotional distress and a declaration that Casey, Walker, and Flood are vexatious litigants as defined in Chapter 11 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE §§ 11.001–.104 (vexatious litigants), 37.001–.011 (declaratory judgments). Casey, on his own behalf and for his clients, responded to Coyle's suit with a motion to dismiss her claims as frivolous under Rule 91a and to designate her a vexatious litigant. *See* TEX. CIV. PRAC. & REM. CODE §§ 11.001–.104; TEX. R. CIV. P. 91a.

Texas's vexatious-litigant statute permits a court to designate a plaintiff a vexatious litigant if the defendant proves that (1) in reasonable probability, the plaintiff will not prevail in the case against the defendant and (2) the plaintiff has a history of pro se litigation covered by the statute. TEX. CIV. PRAC. & REM. CODE § 11.054. The statute defines a history of vexatious litigation as

2

including having commenced, prosecuted, or maintained at least five state or federal civil actions as a pro se litigant in the immediately preceding seven-year period that were:

(1)     finally determined adversely to the pro se plaintiff;

(2)     remained pending at least two years without having been brought to trial or hearing; or

(3)     determined by a trial or appellate court to be frivolous or groundless under state or federal laws or rules of procedure.

*Id.* §§ 11.001(2), .051, .054.

Casey presented evidence that, in the preceding seven-year period, Coyle had commenced, prosecuted, or maintained the following pro se actions:

- a federal habeas petition challenging her expired criminal sentence for misdemeanor disorderly conduct and reckless endangerment, which was dismissed for lack of subject-matter jurisdiction;

- a Pennsylvania Post-Conviction Relief Act (PCRA) proceeding challenging the same expired criminal sentence on the same legal basis, which was dismissed for the same reason;

- a Pennsylvania praecipe for a writ of summons action asserting professional misconduct by an attorney, which was dismissed more than two years later for inaction;[1]

- a Pennsylvania breach-of-contract and civil-conspiracy lawsuit against the same attorney and several other defendants that was dismissed with prejudice more than two years after filing due to inaction; and

- two consolidated Texas lawsuits against multiple defendants that were terminated piecemeal by (1) separate Rule 91a dismissal judgments severed into separate actions as to some parties and (2) non-suit as to others without having a hearing for over two years.

---

[1] In Pennsylvania, a party may commence a civil action either by filing a praecipe for writ of summons or by filing a complaint. PA. R. CIV. P. 1007.

Casey argued that each matter was a civil action for Chapter 11 purposes and each severed dismissal judgment in the Texas lawsuit should count as separate litigation under the statute. Accordingly, Casey argued Coyle had actually commenced at least seven qualifying civil actions.

Coyle did not respond to Casey's motion, but after a hearing at which she appeared and argued, the trial court dismissed all of her claims as frivolous and declared her a vexatious litigant.[2]

Coyle moved for reconsideration of the vexatious-litigant designation.[3] Later, with the representation of counsel, she amended her rehearing motion to seek sanctions against Casey for filing groundless pleadings in bad faith. Coyle's motion argued that (1) the vexatious-litigant determination was erroneous because five of the seven cases Casey had identified as satisfying Chapter 11's criteria did not actually do so and (2) sanctions were warranted because Casey had not disclosed directly adverse controlling precedent and had made groundless legal arguments. *See* TEX. CIV. PRAC. & REM. CODE §§ 10.001, .004 (authorizing sanctions for frivolous pleadings and motions); TEX. R. CIV. P. 13 (authorizing sanctions for "groundless" and bad-faith pleadings, motions, and other papers). Coyle did not deny instituting all of the actions pro se within the relevant time period, but she asserted, among other things, that the federal habeas and PCRA cases were not civil proceedings; the praecipe action and the subsequent breach-of-contract and civil-conspiracy lawsuits were actually separate parts of a single civil action; and the Texas litigation

---

[2] In accordance with Chapter 11, the trial court required Coyle to post a $50,000 bond within ten days, abated the suit pending compliance with the bond requirement, and ordered Coyle to obtain permission from an appropriate local administrative judge before filing any new pro se litigation in Texas. *See* TEX. CIV. PRAC. & REM. CODE §§ 11.055–.056, .101.

[3] The factual and legal bases for Coyle's vexatious-litigant complaints are unclear, but the trial court order dismissing her claims is not at issue in this proceeding.

4

was commenced as a single lawsuit, so without regard to the number of defendants and final judgments, it could only be counted as a single "litigation" for purposes of the vexatious-litigant statute.

Casey disputed Coyle's characterization of the law and offered additional authority to substantiate that Coyle's prior cases met the statutory criteria. Casey argued that even if the trial court might find Coyle's authority persuasive, he was not obligated to disclose that authority because it was not controlling, not directly adverse, or both. *See* TEX. DISC. R. PROF'L CONDUCT 3.03(a) ("A lawyer shall not knowingly . . . fail to disclose to the tribunal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel."). He also pointed out that no authority (controlling or otherwise) precludes severed dismissal judgments from counting as separate civil actions, so his argument that they should be treated as separate "litigations" under Chapter 11 must be presumed to be—and was in fact—made in good faith. *See* TEX. R. CIV. P. 13 ("Courts shall presume that pleadings, motions, and other papers are filed in good faith.").

After a hearing, the trial court granted Coyle's motion, lifted the vexatious-litigant determination, and ordered Casey to reimburse Coyle $8,521.50 for attorney's fees incurred to prepare and argue the rehearing motion. *See* TEX. CIV. PRAC. & REM. CODE §§ 10.001, .004; TEX. R. CIV. P. 13. Payment was required within ten business days.

The trial court subsequently rejected Casey's motion for reconsideration, reaffirmed the sanctions order, and issued findings agreeing with Coyle that Casey had misrepresented the law in stating that the federal habeas and Pennsylvania state-court proceedings were civil actions.

5

Casey promptly sought relief from the sanctions-payment deadline by moving the trial court to sever the sanctions order for immediate appeal, defer the payment deadline until rendition of an appealable judgment, or hold a hearing on his request for deferral in accordance with the procedure adopted in *Braden v. Downey*, 811 S.W.2d 922, 929 (Tex. 1991). In a sworn declaration, Casey averred that deferring payment of the sanction is necessary to ensure both he and his clients are able to access the courts to continue the litigation and to seek meaningful appellate review of the sanctions order. Casey's declaration stated that he lacks the financial means to make an immediate payment of $8,521.50 because he has closed his solo law practice, is no longer litigating new cases, and is not drawing a salary in his new business. He claimed that, if compelled to pay the sanctions before an appeal and supersedeas are available, both he and his clients would be deprived of access to the courts. He averred that the financial burden of making an immediate sanctions payment in the amount ordered would prevent him from obtaining legal representation to pursue meaningful appellate review and would prevent him from continuing to represent Walker and Flood.

The trial court did not rule on Casey's motion, sever the sanctions order so it could be appealed, or defer the sanctions-payment deadline to allow Casey the opportunity to supersede the judgment and perfect an appeal. Nor did the court hold a hearing or make express findings that immediate payment of monetary sanctions would not have a preclusive effect on access to the courts.

Casey sought mandamus relief from the court of appeals, but his petition was summarily denied. We hold that deferral is required under *Braden*, and when satisfaction of the sanctions order is so deferred, an adequate appellate remedy exists. We thus do not consider the propriety of the underlying sanctions order. *See, e.g.*, *City of Houston v. Hous. Mun. Emps. Pension Sys.*, 549

S.W.3d 566, 577 (Tex. 2018) ("Mandamus will issue only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law." (internal quotations omitted)).

In *Braden*, a litigant and his attorney were sanctioned for discovery abuse. 811 S.W.2d at 924. The trial court ordered the party to pay $10,000 within thirty days and the attorney to complete ten hours of community service within six weeks. *Id.* at 926. The monetary sanction far exceeded the $500 reimbursable attorney's fees the movant had requested as a sanction and thus amounted to a penalty. *Id.* at 929. On petition for mandamus relief, the sanctioned party asserted that the sanctions order was improper and that neither he nor his lawyer had an adequate remedy at law. *Id.* at 928.

We declined to consider the propriety of sanctions by mandamus, but we held that the trial court abused its discretion in imposing monetary sanctions to be paid and community service to be performed "before those sanctions, and the basis for imposing them, could be appealed." *Id.* at 925, 930. We therefore granted relief directing the trial court to modify the sanctions order to defer payment of the monetary and performative sanctions until rendition of final judgment, thus allowing the merits of the sanctions order to be determined on appeal. *Id.* at 930-31.

We observed that improper monetary sanctions orders can typically be rectified on appeal and that if we were to review all such orders by mandamus, "it would soon cease to be an extraordinary writ." *Id.* at 928. But at the same time, we acknowledged that the magnitude of monetary sanctions made payable before rendition of an appealable order could have a "preclusive effect on the violating party's access to the courts" and "should not ordinarily be used to dispose of

7

litigation." *Id.* at 929. We thus adopted a process to balance the trial court's discretion to "levy some monetary sanctions during pretrial proceedings" with the need to ensure that prepayment of "more severe sanctions" does not significantly impair "a party's willingness or ability to continue the litigation." *Id.*

Subject to good-faith pleading requirements, when a litigant, like Casey, "contends that a monetary sanction award precludes access to the court," the court "must either (1) provide that the sanction is payable only at a date that coincides with or follows entry of a final order terminating the litigation; or (2) make[] express written findings, after a prompt hearing, as to why the award does not have such a preclusive effect." *Id.* at 929 (quoting *Thomas v. Cap. Sec. Servs. Inc.*, 836 F.2d 866, 882-83 n.23 (5th Cir. 1988)); *see also In re Ford Motor Co.*, 988 S.W.2d 714, 723 (Tex. 1998) ("*Braden* allows a trial court reasonable latitude in curbing discovery abuse without pressuring a litigant to give up the case altogether."). Casey's declaration was sufficient to invoke *Braden*'s deferral requirement, and the trial court did not hold a prompt hearing or make the written findings *Braden* requires to avoid deferring the payment deadline.

Casey's sworn declaration contends that prepayment of monetary sanctions in the amount ordered would substantially restrict his ability to continue the litigation through an appeal and would also deprive his clients of access to the courts by imperiling his ability to continue to represent them. Casey's declaration is not merely conclusory, as Coyle contends, but instead elaborates as to the basis for his inability to continue with the litigation—both as a litigant and as counsel. Casey's declaration also explains that an appeal is inadequate because he lacks the financial means to make an upfront sanctions payment while pursuing the merits. As to Casey's asserted inability to continue

8

to represent his clients, we have said in the attorney-disqualification context that depriving parties of their chosen counsel is a severe remedy that can result in "immediate and palpable harm" and "disrupt trial court proceedings." *See In re Thetford*, 574 S.W.3d 362, 373 (Tex. 2019) (citations omitted). Because Casey is not just an attorney in the case, but also a litigant, we need not explore the circumstances that might substantially impact a client's access to the courts when monetary sanctions are imposed only on counsel.[4] It is sufficient that Casey's access to the courts to vindicate his rights in the litigation would be substantially impaired and would render a remedy by appeal inadequate.

We reject Coyle's argument that *Braden* does not apply when sanctions compensate an opposing party, like the attorney's fees imposed as sanctions here. According to Coyle, *Braden*'s deferral mandate is implicated only when a sanctions award rises to the level of a penalty that impedes resolution of the case on the merits. While it is true that the monetary sanction in *Braden* significantly exceeded the opponent's compensable attorney's fees, *Braden* is not limited in the way Coyle suggests: (1) *Braden* was not (and has never been) expressly limited to its facts; (2) the deferral requirement in *Braden* is broadly framed as applying to "monetary sanctions . . . made payable prior to the entry of a final appealable order" that are "substantial" enough to restrict access to the courts; and (3) the Court ordered the trial court to defer payment of the entire $10,000 sanctions amount, not just the amount exceeding the opponent's reasonable attorney's fees. *Braden*, 811 S.W.2d at 929-30 (quoting *Thomas*, 836 F.2d at 882-83 n.23). Nor do we find such a distinction

---

[4] Simply getting a new lawyer is not always a viable option. For example, clients may lack the resources required for replacement counsel to get up to speed on the case, or they may lose creative billing arrangements enabling the litigation, such as contingency or flat rate fees.

9

justifiable. *See Thomas*, 836 F.2d at 882 & n.23 ("[A]ny type of sanction, monetary or otherwise, should not result in preclusion of access to the courts.").

*Braden*'s focus is on the *effect* of a monetary sanction that must be paid before it can be superseded and appealed, not on a specific amount or purpose of the sanction. *See Ford Motor*, 988 at 722 ("If the sanctions are small enough that the party's continuation of the litigation is not seriously impaired, then . . . the appellate remedy is adequate."). Trial courts have discretion to require immediate payment of monetary sanctions, but that discretion is not without limits. And an opposing party may be awarded sanctions before an appealable judgment is rendered, but neither Chapter 10 nor Rule 13 creates a right to payment before supersedeas is available. *Braden* concerns are implicated based on a sanction order's requirement that the sanction be paid in advance of an appealable judgment, and when properly invoked, the *Braden* process favors deferral by making that the default unless the trial court supports the requirement of an upfront payment by (1) holding a "prompt hearing" and (2) making "express written findings" that the immediate-payment requirement will not significantly impair a party's willingness or ability to continue the litigation. *Braden*, 811 S.W.2d at 929-30 (requiring deferral when a party contends prepayment will have a preclusive effect unless the court holds a prompt hearing and makes express fact findings). Neither happened here, and the ship has sailed on the trial court's discretion to hold the prompt hearing *Braden* requires.

Accordingly, rather than reviewing the propriety of the sanctions award by mandamus, we hold, as we did in *Braden*, that the trial court must modify its order to allow Casey an opportunity to appeal before the sanctions must be paid. We also decline to consider the merits of the

10

vexatious-litigant ruling, because Casey has not established that an adequate appellate remedy is lacking. *See In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 468-69 (Tex. 2008); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004). The writ of mandamus will issue only if the court does not promptly comply with our directive. *See* TEX. R. APP. P. 52.8(c).

**OPINION DELIVERED**: November 22, 2019

11